| | |
|---|---|
| OMAR THOMAS,<br>  *Plaintiff*,<br><br>v.<br><br>JHON ALDI, *et al.*,<br>  *Defendants*. | No. 3:18-cv-1350 (VAB) |

## INITIAL REVIEW ORDER

Omar Thomas ("Plaintiff"), currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, has filed an Amended Complaint, *pro se*, under 42 U.S.C. § 1983, in accordance with the Court's previous January 18, 2019 Order. Initial Review Order, ECF No. 15 (Jan. 18, 2019) ("IRO").

Security Risk Group Coordinator Jhon Aldi, Captain Dougherty, Lieutenant Tammaro, Lieutenant Papoosha, Lieutenant Chevalier, Lieutenant Davis, Correctional Officer Barbuto, Correctional Officer Laughman, Correctional Officer Hall, Captain Walsh, and Population Management are the Defendants.

Mr. Thomas alleges that the Defendants were deliberately indifferent to his safety and failed to protect him from harm.

All claims against Lieutenant Papoosha, Lieutenant Chevalier, Lieutenant Davis, Captain Walsh, and Population Management, the claims against Security Risk Group Coordinator Aldi relating to the incident at Corrigan, the claims against all Defendants for damages in official capacity, and the request for declaratory relief are **DISMISSED** under 28 U.S.C. § 1915A(b).

The case will proceed on the deliberate indifference to safety/failure to protect claims

against Captain Dougherty and Lieutenant Tammaro relating to the incident at Corrigan, against defendants Security Risk Group Coordinator Aldi, Captain Dougherty, and Lieutenant Tammaro regarding protective custody placement, and against Correctional Officers Laughman, Hall, and Barbuto relating to the incident at MacDougall. The case also will proceed on an excessive force claim against Correctional Officer Laughman.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A. **Factual Allegations**

In October 2017, at Corrigan-Radgowski Correctional Institution ("Corrigan"), Mr. Thomas allegedly asked to be placed in protective custody. Am. Compl., ECF No. 17 at 4 (Jan. 25, 2019). On November 18, 2017, after three weeks in segregation pending placement, his request allegedly was denied. *Id.* Mr. Thomas told Captain Dougherty and Lieutenant Tammaro, both verbally and in writing, that he had been threatened by members of the Security Risk Group, Bloods. *Id.*

After being denied protective custody placement, Mr. Thomas allegedly was returned to the B-pod housing unit. *Id.* On January 20, 2018, Mr. Thomas allegedly was involved in an altercation with multiple Bloods members. *Id.* Following the altercation, a shank allegedly was found on the ground. Mr. Thomas allegedly had deep cuts on his face and ears as well as bruises on his face and body. He allegedly began experiencing migraine headaches and dizziness. *Id.* The following day, Captain Dougherty and Lieutenant Tammaro allegedly laughed at his injuries. *Id.* at 5.

Mr. Thomas alleges he again requested protective custody placement, along with his cellmate Eduardo Marquez. *Id.* On February 22, 2018, both requests allegedly were denied. *Id.* The following day, Mr. Thomas and Mr. Marquez allegedly were transferred to Northern

Correctional Institution. *Id.* at 6. Mr. Thomas allegedly immediately requested "rec alone" status for safety. A few days after he arrived, Mr. Marquez allegedly was assaulted. *Id.*

On May 23, 2018, Mr. Thomas allegedly was transferred to MacDougall-Walker Correctional Institution ("MacDougall") on "rec alone" status. *Id.* Mr. Thomas alleges that "rec alone" status was created by prison officials to avoid sending inmates to protective custody. *Id.* He contends that "rec alone" status is frowned upon by Security Risk Group inmates. *Id.*

On June 11, 2018, Mr. Thomas allegedly was housed in cell 90, in housing unit B2. *Id.* Bloods members allegedly began yelling "Rec alone cells 91 and 90." *Id.* Correctional Officer Barbuto, who was stationed in the control room, allegedly opened cell 90. *Id.* A Bloods member, allegedly returning from the shower without Correctional Officers Laughman and Hall escorting him, allegedly passed by when the cell was opened. *Id.* That inmate allegedly ran into the cell and assaulted Mr. Thomas. *Id.* at 7. Correctional Officer Laughman allegedly entered the cell and used force after Mr. Thomas, even though he allegedly was dazed from the assault and was complying with orders. *Id.* Mr. Thomas allegedly suffered a laceration to his right eye and has been experiencing migraine headaches, paranoia, and emotional distress. *Id.* He allegedly has received medication and mental health treatment. *Id.*

Since the June 11, 2018 incident, correctional officers and inmates allegedly have been kicking and shaking Mr. Thomas's cell door. *Id.* They allegedly laugh at him and mock him, saying that he was assaulted because he is on "rec alone" status. *Id.* Mr. Thomas alleges he loses sleep at night, fearing an inmate will open his door, and when correctional officers cut or slam a trap or cell door, he allegedly becomes paranoid, startled, and scared. *Id.*

### B. Procedural History

On August 13, 2018, Mr. Thomas filed a Complaint against Security Risk Group Coordinator Jhon Aldi and four other defendants. Compl., ECF No. 1 (Aug. 13, 2018).

On October 2, 2018, the Court issued an initial review order, directing Mr. Thomas to file an amended complaint within thirty days. Initial Review Order, ECF No. 8 (Oct. 2, 2018) ("IRO").

On October 12, 2018, Mr. Thomas moved to amend or correct his Complaint. Mot., ECF Nos. 9 and 10 (Oct. 12, 2018).

On January 18, 2019, the Court issued an Initial Review Order. *See* IRO.

On January 25, 2019, Mr. Thomas filed an Amended Complaint. Am. Compl.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P.

8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage nonetheless is distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III. Discussion

Mr. Thomas asserts five legal claims: (1) Population Management, Security Risk Group Coordinator Aldi, Captain Dougherty, Lieutenants Tammaro and Papoosha were deliberately

indifferent to his safety by failing to protect him from assault after he informed them of the threat and later laughed at his injuries; (2) Population Management Aldi, Captain Dougherty, Lieutenants Tammaro and Papoosha were deliberately indifferent to his safety by observing the attack and not immediately interceding to stop it; (3) Population Management, Security Risk Group Coordinator Aldi, Captain Dougherty, Lieutenants Tammaro and Papoosha were deliberately indifferent to his safety by failing to authorize protective custody placement despite knowing of conflicts between Mr. Thomas and the Bloods; (4) Correctional Officer Barbuto failed to protect Mr. Thomas when he opened the cell door; and (5) Correctional Officers Laughman and Hall failed to protect Mr. Thomas by permitting Bloods members to walk alone, yell to have Mr. Thomas's cell opened, enter his cell, and assault him. Am. Compl. 8-11.

### A. Failure to Comply with Court Orders

As an initial matter, the Court notes that Mr. Thomas has not complied with orders from the Court in drafting his amended complaint. The Court twice instructed Mr. Thomas that he must "allege specific facts indicating what actions each defendant took—or, in his opinion, failed to take—that violated his constitutional rights." IRO at 3, Order [ECF No. 15] at 5.

Of the ten correctional officials named as defendants, Mr. Thomas mentions only five in his statement of facts Captain Doughtery; Lieutenant Tammaro, Correctional Officers Laughman, Hall, and Barbuto; and adds references to Security Risk Group Coordinator Aldi and Lieutenant Papoosha in his statement of legal claims. As Mr. Thomas alleges no facts identifying any actions that Captain Walsh and Lieutenants Chevalier and Davis took, or failed to take, that violated his constitutional rights, he fails to allege cognizable claims against them.

Accordingly, any claims against Captain Walsh and Lieutenants Chevalier and Davis will be dismissed.

### B. Requests for Relief

Mr. Thomas states that he named all defendants in individual and official capacities. As Population Management is not a person, it cannot have an individual capacity. Am. Compl. at 1-3. The Eleventh Amendment bars claims for damages against state officials in their official capacities unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and Mr. Thomas has alleged no facts suggesting that the State of Connecticut has waived this immunity.

Accordingly, any claims for damages against the defendants in their official capacities will be dismissed under 28 U.S.C. § 1915A(b)(2).

Mr. Thomas seeks both declaratory relief and damages.

Declaratory relief operates prospectively. It is intended to enable parties to adjudicate claims before either party suffers significant damages. *Orr v. Waterbury Police Dep't*, No. 3:17-cv-788 (VAB), 2018 WL 780218, at *7 (D. Conn. Feb.8, 2018) (citations omitted) (dismissing the request for declaratory relief because the request related only to past actions; the plaintiff had not identified any legal issue that could be resolved by declaratory relief). As Mr. Thomas seeks a declaration regarding past actions, the request for declaratory relief is inappropriate[1] and will be dismissed under 28 U.S.C. § 1915A(b)(1).

Accordingly, the request for declaratory relief, the claims against all defendants for damages in official capacity, and the claim against defendant Population Management in

---

[1] The Court notes that if Mr. Thomas were to prevail on any of his claims, a judgment in his favor would serve the same purpose as a declaration that the defendants had violated his rights regarding that claim. Thus, any request for declaratory relief is redundant. *See U.S. v. $2,350,000.00 in Lieu of One Parcel of Property Located at 895 Lake Avenue Greenwich, Connecticut,* 718 F. Supp. 2d 215, 229 n.7 (D. Conn. 2010) (noting that if property is not forfeited, receiver-claimants would have been shown to be prevailing innocent owners and declaration to that effect would be redundant).

individual capacity will be dismissed under 28 U.S.C. § 1915A(b).

### C. Deliberate Indifference to Safety and Failure to Protect

The Eighth Amendment prohibits "cruel and unusual punishment[]." U.S. Const. amend. VIII; *see also Robinson v. California*, 370 U.S. 660, 667 (1962) (incorporating the Eighth Amendment's prohibition of cruel and unusual punishment as binding on the states by way of the Fourteenth Amendment). "[S]et[ting] constitutional boundaries on the conditions of imprisonment," the Amendment bars "unnecessary and wanton infliction of pain on a prisoner." *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997) (internal quotation marks omitted). To state a claim for deliberate indifference to safety, in violation of the Eighth Amendment, a plaintiff must show that (1) the alleged conduct was sufficiently serious, and (2) that the defendants acted with a sufficiently culpable state of mind, or acted maliciously and sadistically to cause harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Deliberate indifference exists when prison officials know of and disregard an excessive risk to inmate safety. *Id.* at 837; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference). To determine if a plaintiff faced a risk of serious harm, courts "look at the facts and circumstances of which the official was aware at the time he acted or failed to act." *Hartry v. Cty. of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted). The "deliberate indifference standard embodies both an objective and subjective prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

To establish an Eighth Amendment violation for a prison official's failure to protect from harm, incarcerated plaintiff must show: first, "that he is incarcerated under conditions posing a

substantial risk of serious harm," and second, that the prison official had a "sufficiently culpable state of mind," which in "prison-conditions cases" is "one of deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834.

Mr. Thomas argues that Security Risk Group CoordinatorAldi, Captain Dougherty, Lieutenants Tammaro and Papoosha were deliberately indifferent to his safety by failing to protect him from the January 2018 assault after he informed them of threats, failing to immediately respond when they saw the assault occurring, and refusing his request for protective custody. Am. Compl. at 8-9. Mr. Thomas also contends that Correctional Officers Laughman, Hall, and Barbuto were deliberately indifferent to his safety thereby permitting the June 2018 assault to occur. *Id.*

Mr. Thomas alleges that he specifically informed Captain Dougherty and Lieutenant Tammaro of the threats against him. They allegedly took no action in response to the information and allegedly told Mr. Thomas that they observed the attack but did not act immediately. In addition, Captain Dougherty and Lieutenant Tammaro allegedly laughed at Mr. Thomas's injuries. These allegations are sufficient to state a plausible claim that Captain Dougherty and Lieutenant Tammaro were aware of facts suggesting that Mr. Thomas's safety was in danger and failed to act on that information.

Accordingly, the deliberate indifference to safety and failure to protect claims relating to the incident at Corrigan will proceed against Captain Dougherty and Lieutenant Tammaro.

Mr. Thomas includes Security Risk Group Coordinator Aldi in his claims relating to the incident at Corrigan. Mr. Thomas does not allege that Security Risk Group Coordinator Aldi worked at Corrigan or that he informed Security Risk Group Coordinator Aldi of any threat to his safety at Corrigan. Thus, he has alleged no facts demonstrating Security Risk Group

9

Coordinator Aldi's involvement in the incidents at Corrigan.

Accordingly, any claims against Security Risk Group Coordinator Aldi relating to the incident at Corrigan will be dismissed under 28 U.S.C. § 1915A(b)(1).

Mr. Thomas alleges that Security Risk Group Coordinator Aldi, Captain Dougherty, and Lieutenant Tammaro denied his request for protective custody as a result of the threats to his safety. Although the plaintiff alleges only that he related this information to Captain Dougherty and Lieutenant Tammaro, the Court assumes that Mr. Thomas would have included the same information in his request for protective custody and that, as Security Risk Group Coordinator, Aldi would have been informed of this request.

Accordingly, the Court will order service on all three defendants on the deliberate indifference to safety claim relating to the denial of protective custody placement.

Mr. Thomas includes Lieutenant Papoosha in his claims relating to the January 2018 incident and his request for protective custody. The assault occurred at Corrigan. Mr. Thomas alleges that Lieutenant Papoosha works at Bridgeport Correctional Center ("Bridgeport"). Am. Compl. at 2. As the assault did not occur at Bridgeport, Lieutenant Papoosha could not have protected Mr. Thomas from the assault or immediately interceded to stop it. In addition, Mr. Thomas does not allege that he requested protective custody placement from Lieutenant Papoosha, or that he was confined at Bridgeport at any time relevant to this complaint.

Accordingly, Mr. Thomas fails to state a cognizable claim against Lieutenant Papoosha. The claims against Lieutenant Papoosha will be dismissed under 28 U.S.C. § 1915A(b)(1).

Lastly, Mr. Thomas includes a second deliberate indifference to safety claim relating to the June 2018 assault at MacDougall. He alleges that Correctional Officers Laughman and Hall permitted Bloods members to walk through the housing unit alone and unescorted even though

10

Mr. Thomas was on "rec alone" status because of threats from the Bloods. Am. Compl. at 6. In addition, Correctional Officer Barbuto allegedly opened the cell door of Mr. Thomas, an inmate on "rec alone" status, in response to an inmate's request that he do so. *Id.* These allegations are sufficient to state a claim.

Accordingly, the deliberate indifference to safety claims against Correctional Officers Laughman, Hall, and Barbuto will proceed.

**D. Use of Excessive Force**

The Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by police officers in arresting suspects. *Hemphill v. Schott*, 141 F.3d 412, 416017 (2d Cir. 1998); *see also Salaman v. DeJesus*, 05-cv-1608 (JBA), 2008 WL 160592, at *2 (D. Conn. Jan. 15, 2008) (applying the Fourth Amendment to prisoner's claim that police officer used excessive force during arrest). To establish a Fourth Amendment excessive force claim, a plaintiff must show that the force used by the officer was "objectively unreasonable." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable police officer on the scene, *id.* at 396, and it "requires consideration of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Hemphill*, 141 F.3d at 417. The "core judicial inquiry" is "not whether a certain quantum of injury was sustained but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (internal quotation marks omitted) (quoting *Hudson v. MacMillian*, 503 U.S. 1, 7 (1992)).

11

Mr. Thomas alleges that Correctional Officer Laughman entered his cell and used excessive force against Mr. Thomas when he was dazed from the assault and complying with Correctional Officer Laughman's orders. Am. Compl. at 7. Although Mr. Thomas does not list excessive force among his legal claims, the Amended Complaint may support a plausible claim for use of excessive force.

An excessive force claim has objective and subjective components. *See Hudson*, 503 U.S. at 8. Objectively, the court considers the amount of force used and whether that force is repugnant to the conscience of mankind. *Id.* at 9-10. Subjectively, the court must determine whether the correctional officer had a "wanton" state of mind when applying the force. *Id.* at 8. In evaluating these components, the court considers the extent of any injuries suffered by the inmate, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the correctional officers involved in the use of force, and any efforts made to temper the amount of force used. *See Hudson*, 503 U.S. at 7.

Mr. Thomas alleges that Correctional Officer Laughman used force against him when he was complying with his orders. Although he does not describe the force used, force applied when an inmate is complying with orders arguably suggests a wanton state of mind. As a result, for now, the Court will permit an excessive force claim to proceed against Correctional Officer Laughman.

## IV. CONCLUSION

All claims against Lieutenants Papoosha, Chevalier, Davis; Captain Walsh, and Population Management; the claims against Security Risk Group Coordinator Aldi relating to the incident at Corrigan; the claims against all defendants for damages in official capacity; and the request for declaratory relief are **DISMISSED** under 28 U.S.C. § 1915A(b).

The case will proceed on the deliberate indifference to safety/failure to protect claims against Captain Dougherty and Lieutenant Tammaro relating to the incident at Corrigan; against Security Risk Group Coordinator Aldi, Captain Dougherty, and Lieutenant Tammaro regarding protective custody placement; and against Correctional Officers Laughman, Hall, and Barbuto relating to the incident at MacDougall. The case also will proceed on an excessive force claim against Correctional Officer Laughman.

The Court enters the following orders:

(1) The Clerk shall contact the Department of Correction Office of Legal Affairs to ascertain the current work address for Security Risk Group Coordinator Aldi, Captain Dougherty, Lieutenant Tammaro, and Correctional Officers Laughman, Hall, and Barbuto, mail a waiver of service of process request packet to each defendant at the address **by April 3, 2020**, and report to the court on the status of those waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) The Clerk shall send Mr. Thomas a copy of this Order.

(3) The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an Answer or motion to dismiss, **by June 5, 2020**. If they choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

13

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **by October 9, 2020**. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed **by November 13, 2020**.

(7) Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff **MUST** notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9) Mr. Thomas shall utilize the Prisoner Efiling Program when filing documents with the court.

**SO ORDERED** this 9th day of March, 2020 at Bridgeport, Connecticut.

/s/
Victor A. Bolden
United States District Judge